IN RE LOROK, A. K. A., KRAGEN.

(No. 22613—Decided November 10, 1952.)

*Messrs. Beach & Warner,* for appellants Chester C. Woods and Florence Woods.

*Messrs. Payer, Bleiweiss, Crow & Mollison* and *Messrs. Nazor & Nazor,* for appellee Emma Elizabeth Torok.

SKEEL, P. J. This appeal comes to this court from a judgment entered for the respondents after the granting of respondents' motion to dismiss the petitioners' petition. The action, instituted in the Common Pleas Court, was one in habeas corpus. The petition alleges that the petitioners, with the consent and approval and upon the express request of Emma Elizabeth Torok, the unwed mother of Patricia Ann

Lorok (now about three years of age) and her father, Frank Cragon, continuously from the child's early infancy until May 28, 1952, had the exclusive custody and control and during that time rendered parental care to the minor child; that since May 28, 1952, the mother and father have taken possession of the child; that the petitioners are unlawfully deprived of the child's custody; and that they, the petitioners, are entitled to the immediate custody, said child now being unlawfully restrained of its liberty by the respondents.

The petition alleges further that the respondents, the mother and father of such child, are unsuitable persons to have her custody and that it would be for the best interest of the child that she be restored to the custody of the petitioners.

The petition alleges further that during the time the petitioners had the custody of such child, the respondents promised that they would consent to its adoption by petitioners, but that the respondents delayed doing so until the petitioners, because of growing affection for the child, notified respondents to either take the child away or consent to its adoption. Upon the failure of respondents to act upon petitioners' demands, the petitioners say that they instituted an action in Juvenile Court of Ashtabula County, charging the child to be a neglected and dependent child within the purview of Section 1639-23, General Code. Upon trial, because of the care given the child by the petitioners, the court found against the petitioners, holding that the child was not neglected or dependent and, after finding against petitioners on their complaint, retained jurisdiction for the purpose of determining the right of custody of the child, and, by its decree, gave custody to the child's mother, Emma Elizabeth Torok, ordering petitioners to turn the child over to its mother. When these petitioners, the applicants in the Juvenile Court action, refused to

follow the order of the court, a citation for contempt was issued.

After this decision, the mother filed an application in the Juvenile Court of Ashtabula County, pursuant to Section 1639-16, General Code, asking the court to determine the right of custody of said child, to which action the petitioners herein were made parties. The Juvenile Court, upon hearing on April 29, 1952, over-ruled petitioners' objection to the court's jurisdiction of the subject matter of the action and awarded custody of Patricia Ann Lorok to her mother. Thereafter, upon failure of petitioners to carry out the court's order, a citation for contempt was issued and served upon them on the evening of May 28, 1952.

The petition alleges further that the Juvenile Court of Ashtabula County was without jurisdiction to determine the custody of the minor child, and that its order was void and unenforceable.

The petition alleges further that on May 28, 1952, the respondents, with another, entered the home of petitioners and committed an assault and battery upon the person of Mrs. Florence Woods, one of the petitioners herein, and that they took the child from her custody and carried it to Ashtabula where it is now in the custody of its mother.

The prayer of the petitioners is to have restored to them, the custody of said minor child, Patricia Ann Lorok (now three years of age).

The undisputed facts disclose that Patricia Ann Lorok was born out of wedlock to Emma Elizabeth Torok on July 3, 1949, at Bedford Municipal Hospital; that the father was Frank Cragon, also known as Jasper Kragen; and that shortly after the birth of the child, the mother employed Chester C. and Florence Woods (husband and wife and petitioners herein) to care for her until other arrangements could be made. During the period of time that the child was in the

care of the petitioners, they received from the mother about $2,000 for their services, and the mother was a constant visitor of her child.

Some conversation was had at various times between Chester and Florence Woods and the mother of the child looking toward the mother giving consent to the Woods' adopting Patricia Ann. The mother having failed to give such consent or to comply with the Woods' demands that she either so consent or remove the child because of the growing affection that was developing between the child and the Woods, the petitioners filed an application in the Juvenile Court of Ashtabula County on December 17, 1951, charging Patricia Ann Lorok as being a neglected and dependent child.

The court on March 7, 1952, upon final hearing of such application found against Chester and Florence Woods on their claim that the child was dependent and neglected and also found that Chester and Florence Woods were not entitled to the custody of the child and awarded custody to her mother, Emma Elizabeth Torok.

To this holding, as to custody, the petitioners herein filed an appeal on questions of law and fact to the Court of Appeals for Ashtabula County, which appeal is still pending in that court.

On the 22nd day of March, 1952, Emma Elizabeth Torok (mother of the child) filed an application in the Juvenile Court of Ashtabula County under authority of Section 1639-16, General Code, to determine the right of custody of Patricia Ann Lorok, seeking to have the custody of said child granted to her. Chester and Florence Woods were cited to appear and service was had upon them by the sheriff of Cuyahoga county.

On April 16, 1952, Chester and Florence Woods filed a motion seeking to have the application dismissed for want of jurisdiction. Notice of such motion was served

upon counsel for the applicant. A hearing was had upon the motion on April 17, 1952, and at the conclusion of such hearing the motion was overruled, the court holding that it was vested with jurisdiction to determine custody without finding such child neglected or dependent, as provided by the provisions of Section 1639-16 (a) 2, General Code. The application was thereafter heard on April 25, 1952. The court found that Emma Elizabeth Torok was entitled to custody of her minor child, and the Woods were ordered to deliver the child to her mother within one week.

The order overruling the motion to dismiss the application of Emma Elizabeth Torok, filed by Chester and Florence Woods and the ruling of the court on such application granting custody of Patricia Ann Lorok to her mother, was journalized April 29, 1952, and an amended journal entry was filed by the court on May 8, 1952. No appeal was taken from that judgment. The Woods having failed to comply with the order of the court, a contempt proceeding was instituted and an alternative writ was served on them on the evening of May 28, 1952.

During the daytime of May 28, 1952, Emma Elizabeth Torok, Frank Cragon and Emma Torok's sister went to the home of Chester and Florence Woods in Parma Heights and by force took Patricia Ann Lorok from the custody of the Woods and returned to Ashtabula county where such minor child has ever since been in the custody of her mother, Emma Elizabeth Torok. Florence Woods claims to have been assaulted and beaten by Emma Elizabeth Torok, her sister, and Frank Cragon. A warrant was issued for their arrest upon the complaint of Florence Woods, and they were notified to return for trial on a charge of assault and battery in the mayor's court of Parma Heights on Monday morning June 2, 1952 at 9 o'clock.

The petition for a writ of habeas corpus was filed by

petitioners in Cuyahoga county on May 29, 1952. Counsel for petitioners filed the following "instructions to sheriff" for the admitted purpose of getting service on the respondents:

"Frank Cragon, a. k. a. Frank Kragon, and Emma Elizabeth Torok, the respondents herein, are to be at Parma Heights police station (city hall) at *9 o'clock a. m. Monday morning, June 2, 1952,* to answer to criminal charge before the mayor of said village where they should be served as they will thereafter likely return to Ashtabula, Ohio."

Service of summons was had upon the respondents in accordance with the foregoing instructions when they came from their homes in Ashtabula county to defend themselves against a criminal charge (assault and battery) instituted by one of the petitioners and service was had while they were actually attending said prosecution.

On June 4, 1952, the respondents filed a motion to quash service of summons and to dismiss the petition for lack of jurisdiction. This motion came on for hearing on June 17th and was granted by the Common Pleas Court of Cuyahoga County, the petition being dismissed and a judgment for costs entered against the petitioners. The allegations of the motion were:

"1. The defendants were not duly served with process in accordance with law.

"2. The purported service of process was invalid, defective, irregular and void.

"3. The court has no jurisdiction over the purported cause of action set forth in the petition.

"4. The court has no jurisdiction of the parties.

"5. The court has no jurisdiction over the subject matter; * * *.

"6. Prior and exclusive jurisdiction over the subject matter has attached and vested in the Juvenile Court of Ashtabula County."

It is the claim of the petitioners that "the trial court erred in dismissing their petition and entering judgment against them for costs and the judgment so entered is contrary to law and unconstitutional."

Two principal questions are presented: (1) Were the respondents legally served with summons? (2) Can the Common Pleas Court of Cuyahoga County, under the admitted facts, take jurisdiction of the question of the legal custody of Patricia Ann Lorok?

The first of these questions seems not to have been considered by the trial court. No entry, either granting or overruling the motion to quash service, is found in the transcript. It may be that because the court dismissed the petition the court felt it unnecessary to rule separately on each motion inasmuch as the entry made disposed of the case. In any event, it is our conclusion that the service of summons was improper and ineffective. According to the undisputed facts, service was had on the respondents in the mayor's court of Parma Heights, Ohio. The respondents had come to the mayor's court from their residence in Ashtabula county, of necessity, in response to a criminal charge instigated by one of the petitioners. They had been advised of the warrant by their counsel and had responded at his direction. Under such circumstances, the respondents were exempt from service in a civil action until a reasonable time passed in which to leave the jurisdiction after the conclusion of the trial.

In 32 Ohio Jurisprudence, 476, Section 86, of the article on "Process" it is said that the authorities are in disagreement as to whether the reasons which exempt a party to a civil suit from service of civil process apply in a criminal proceeding.

"As to extradition defendants, the Ohio rule is that of privilege. As to other defendants, the rule thus followed is in denial of any privilege."

The case cited for this last statement is not in point.

It concerns a defendant who made a voluntary entry into a county other than his residence for purpose of obtaining a hearing before the grand jury.

*Goldman, Recr.,* v. *Krumholz* (Cincinnati Superior Court, 1923), 1 Ohio Law Abs., 791, the only other cited case, holds that a nonresident, present in Ohio to answer a criminal indictment is not exempt from service of summons in a civil action, and attempts to distinguish such holding from *Compton, Ault & Co.* v. *Wilder,* 40 Ohio St., 130, where it was held:

"W, a citizen of Pennsylvania, was extradited from that state upon a requisition by the Governor of Ohio, upon application of C., A. & Co., in a criminal prosecution instituted by them in Hamilton County. *Held,* that the service of summons and an order of arrest, issued in a civil action brought by C., A. & Co. against W., and made upon W. directly after he had entered into a recognizance to appear before the Court of Common Pleas at its next term, and before conviction and before he had an opportunity to return to his home, was rightfully set aside."

The *Wilder case* is based entirely on the proposition that the defendant was forced to come to Ohio by an extradition proceeding instituted by C., A. & Co.

We can find no decision of a reviewing court of this state dealing with the right to be exempt from civil processes while within the jurisdiction of a court in a county of this state as a defendant who has come into such county to plead or to be tried in a criminal proceeding, the defendant having come from his residence in another county solely for that purpose.

In 72 Corpus Juris Secundum, 1121, Section 82 of the article on "Process" it is said:

"Although not universally followed, it is a general rule that a nonresident who enters a jurisdiction to appear, plead, or be tried in a criminal action against him is exempt from service of civil process."

Also, in 21 Ruling Case Law, 1313, Section 60, it is said:

"As to nonresidents charged with crime, or brought within the jurisdiction of the court by compulsory process, the general rule seems to be that they are exempt from service of civil process while coming into the jurisdiction, while necessarily in attendance on the court, and while returning to their place of residence, provided no unnecessary delay occurs in returning. So one charged with a criminal offense in another county than that of his residence and who on trial is discharged, is privileged from civil suit in that county until the lapse of a reasonable time to enable him to return home. It is said that the demands of public policy which require the invalidation of a service of process where the case is a civil one are not stronger nor more logical or philosophical than where attendance on the court is in a criminal case."

The article then notes some cases which hold to the contrary.

In the Oklahoma case of *Thomas* v. *Blackwell* (1935), 172 Okla., 487, 46 P. (2d), 509, the defendant, a nonresident of Washita county, was involved in an automobile accident in that county. He returned to his home or residence in Caddo county. The plaintiff filed a criminal complaint before a justice of peace in Washita county, charging defendant with driving while under the influence of intoxicating liquor. The plaintiff also instituted a civil action in the District Court for damages. A warrant was issued in the criminal action; the defendant was arrested in the county of his residence and taken before the justice of peace in the county where the accident took place and while there was served with process in the civil action. The court held, in ruling on a motion to quash service, as disclosed by the first paragraph of the syllabus:

"A nonresident who is compulsorily brought into a

county other than his residence, to attend court in answer to a criminal charge pending against him, is immune from service of civil process for a reasonable time, while going to, attending at, or returning from court, in the furtherance of the administration of justice and as a matter of public policy, when timely application is made to claim such immunity from service.''

See, also, *Palmer* v. *Rowan* (1887), 21 Neb., 452, 32 N. W., 210, 59 Am. Rep., 844; *Barnes* v. *Moore* (1950), 217 Ark., 241, 229 S. W. (2d), 492; and the note in 18 Ann. Cas., 127, 128.

The petitioners contend that the respondents, by filing a motion to dismiss for want of jurisdiction as well as a motion to quash service, entered a general appearance and thereby waived the right to challenge the service of summons. Under ordinary circumstances, that would be true. But where a party has abused the process of the court, the court may, when the question is promptly brought to its attention, determine the question of the propriety of exercising its jurisdiction. 32 Ohio Jurisprudence, 405, 406, Section 31 of the article on ''Process.''

We hold, therefore, that the right to challenge the service òf summons was not waived when promptly brought to the court's attention, because a motion to dismiss for want of jurisdiction of the subject matter, was filed at the same time. The court should have ordered that service of summons quashed.

The petitioners' second claim of error deals with the order of the court dismissing their petition for want of jurisdiction of the subject matter. The facts upon which this order was made are those alleged in the petitioners' petition, supplemented by the undisputed evidence introduced upon the hearing of the motion, which evidence has hereinbefore been fully set forth. It is the contention of the petitioners that a

Juvenile Court is not vested by law with jurisdiction to determine the right of custody of a minor child unless and until it has found such child to be either delinquent, dependent or neglected, and for that reason that the order of the Juvenile Court of Ashtabula County, journalized May 8, 1952, was absolutely void. It is the contention of the respondents that the Juvenile Court of Ashtabula County was empowered by Section 1639-16 (a) 2, General Code, to determine such custody and, having done so upon application properly made, the petitioners being parties to the action, that such judgment is conclusive between the parties until reversed or modified by a reviewing court upon appeal on questions of law. (No appeal was taken from such order.) The respondents claim further that the Juvenile Court of Ashtabula County is vested with power to determine its jurisdiction and that when such jurisdiction is challenged, as it was in this case by the petitioners, and the court has determined that question adversely to them, they cannot thereafter attack such judgment collaterally in a habeas corpus proceeding.

It should be kept in mind that the Legislature more than 40 years ago created the Juvenile Court. Its purpose was to provide a separate tribunal to take jurisdiction over the problems of child delinquency and neglect. Since that time, the jurisdiction of the Juvenile Court has been expanded to include supervision of child care under certain circumstances and many other juvenile problems. One of the great advantages of the Juvenile Court in dealing with children is the simplification of its procedure and its right to determine by rule the method of invoking its jurisdiction. In interpreting the Juvenile Court Act, it should be considered in the light of the broad purposes for which it was created.

Section 1639-16, General Code, provides in part:

"[Jurisdiction.] (a) The court shall have exclusive

original jurisdiction under this chapter or under other provisions of the General Code:

"1. Concerning any child who is (1) delinquent, (2) neglected, (3) dependent, crippled, or otherwise physically handicapped.

"2. To determine the custody of any child not a ward of another court."

The foregoing provision (Section 1639-16 [a] 2, General Code) in no way affects, in the first instance, the power of the Common Pleas Court in proceeding in habeas corpus under Section 12161, General Code, or with regard to custody of children in divorce actions, under Sections 8003-22 and 8005-4, General Code.

Repeals by implication are not favored, and no such result was obtained in any part of these sections as they were successively passed by the Legislature. These sections are not in conflict, each providing an important link in protecting the rights of minors. In expanding the jurisdiction of the Juvenile Court over children, it is provided by Sections 8005-4, 8005-5 and 8005-6, General Code, that courts having questions of care, support or custody of minors under 18 years of age before them, may certify that part of the case dealing with the child's custody or support to the Juvenile Court. This fact is mentioned to show the legislative trend toward enlarging the Juvenile Court's jurisdiction in dealing with juveniles.

The contention of the petitioners that the Juvenile Court does not have jurisdiction to determine custody of a minor, except it be found to be delinquent, neglected or dependent, would read out of the statute Section 1639-16 (a) 2, General Code, which reads:

"To determine the custody of any child not a ward of another court."

Such holding would also nullify the full import of Section 8005-6, General Code, where it is provided in part:

"Any court, other than a Juvenile Court, having jurisdiction in any case respecting the care, custody, or support of a child under eighteen years of age, may, on its own motion or on motion of any interested party, with the consent of the Juvenile Court, certify the record in the case or so much thereof and such further information in narrative form or otherwise as the court deems necessary or the Juvenile Court may request, to the Juvenile Court for further proceedings; and thereupon the Juvenile Court shall have exclusive jurisdiction."

Cases of the kind that may be certified to the Juvenile Court are many, where the child concerned was neither delinquent, neglected or dependent as defined by Sections 1639-2, 1639-3 and 1639-4, General Code.

The appellants cite *Paddock* v. *Ripley,* 149 Ohio St., 539, 80 N. E. (2d), 129, as supporting the claim that the Juvenile Court was without jurisdiction to deal with the custody of Patricia Ann. It is true that the syllabus in that case provides:

"The Juvenile Court has jurisdiction of a child only if such child is found to be delinquent, neglected or dependent. The Court of Common Pleas has jurisdiction to issue a writ of habeas corpus to a father who is a fit person for the custody of a child which is neither delinquent, neglected nor dependent."

The question to be decided in the *Paddock case* did not require an interpretation of Section 1639-16 (a) 2, General Code. The facts there involved were that a father had placed his child with her maternal grandparents after the death of his wife. He was thereafter remarried and requested the return of his daughter, which request was refused. Thereupon a proceeding in habeas corpus was instituted. The principal question to be decided was whether by oral agreement, the father had permanently surrendered the child to the grandparents. The trial court held there

was no such agreement, which holding was affirmed by the Court of Appeals and the Supreme Court. At some stage of the proceedings it was argued that by Section 1639-16, General Code, the Juvenile Court was given exclusive original jurisdiction to determine the rights of custody of a minor child. All that was needed to decide the case, therefore, aside from the question of the oral agreement, was that the right to determine custody of a minor child as provided by Section 12161, General Code, had not been repealed by implication by the passage of Section 1639-16, General Code. It is one thing to hold that rights under existing statutes are not repealed, by implication, by the enactment of new legislation that may, in part, deal with the same subject, but it is quite a different thing unnecessarily to wipe out as meaningless a valid provision of a statute by judicial interpretation. In any event, since the *Paddock case* was decided in 1948, the Legislature has passed a revised divorce code and one dealing with the subject of minors wherein the jurisdiction of the Juvenile Court may be called into use on a broader scale than was before provided. Such changes might require a reconsideration of the first part of the syllabus of the *Paddock case.*

A case directly in point, upholding the jurisdiction of the Juvenile Court, as provided by Section 1639-16 (a) 2, General Code, is *McFadden* v. *Kendall* (1946), 81 Ohio App., 107, 77 N. E. (2d), 625. At page 110, the court said:

"By the provisions of Section 1639-16, General Code, the Juvenile Court is granted *exclusive original jurisdiction* (1) concerning any child who is dependent, and (2) to determine the custody of any child not a ward of another court.

"It is urged by the plaintiff that under this latter provision the Juvenile Court has jurisdiction to determine the custody of a child only if such child is not a

ward of another court, and that the provision of this subsection is a limitation of the jurisdiction granted to the Juvenile Court over dependent, neglected, delinquent, or crippled children.

"With this view we cannot agree.

"Such a construction is not supported by a study of the section. On the contrary, the only fair construction which can be given is that subsection 2 of Section 1639-16, General Code, is a grant of jurisdiction and not a limitation of jurisdiction."

From the foregoing, it must be perfectly clear that when the petitioners herein challenged the jurisdiction of the Juvenile Court of Ashtabula County to hear and determine the mother's application for custody of Patricia Ann under the provisions of Section 1639-16, General Code, the question of jurisdiction of the court over the subject matter of the application was put in issue. A justiciable dispute was presented by such motion. It is the duty of a court to examine into the claim of a litigant that the court is without jurisdiction either of a party or parties, or the subject matter.

In 21 Corpus Juris Secundum, 174, Section 113 of the article on "Courts" we find the following:

"Every court has judicial power to hear and determine, or inquire into, the question of its own jurisdiction, both as to parties and as to subject matter, and to decide all questions, whether of law or fact, the decision of which is necessary to determine the question of jurisdiction."

It being admitted that the question of the jurisdiction of the Juvenile Court of Ashtabula County was litigated when challenged by the petitioners herein, and that the decision was adverse to them, the question remains as to whether they can now collaterally attack that decision in this proceeding.

In cases where the determination of the jurisdiction of the court is dependent upon questions of fact and

the trial court, upon having its jurisdiction challenged upon questions of fact determines that it is vested with jurisdiction of the subject matter, such judgment cannot be collaterally attacked. *State, ex rel. Halchak, v. Doyle, Judge,* 41 Ohio App., 569, 180 N. E., 388.

Where the basis of the challenge is other than on questions of fact, a collateral attack will be permitted only if the policy against permitting a court to act beyond its jurisdiction outweighs the reasons underlying the doctrine of *res judicata.*

In the Restatement of the Law of Judgments, page 57, Section 10, the rule is stated as follows:

"(1) Where a court has jurisdiction over the parties and determines that it has jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the doctrine of *res judicata* is outweighed by the policy against permitting the court to act beyond its jurisdiction.

"(2) Among the factors appropriate to be considered in determining that collateral attack should be permitted are that

"(a) the lack of jurisdiction over the subject matter was clear;

"(b) the determination as to jurisdiction depended upon a question of law rather than of fact;

"(c) the court was one of limited and not of general jurisdiction;

"(d) the question of jurisdiction was not actually litigated;

"(e) the policy against the court's acting beyond its jurisdiction is strong.

"*Comment: A. Determination of jurisdiction over the subject matter as res judicata.* The rule stated in this section is an application of the general principle of *res judicata,* precluding the parties from relitigat-

ing a matter determined by a court after a fair opportunity has been afforded to them to litigate the matter. Even though the decision of the court is erroneous, the parties are bound by it. This is true although the matter decided is the question of the jurisdiction of the court over the subject matter of the suit. Although the court does not have jurisdiction over the subject matter, it may have jurisdiction to determine the question whether it has jurisdiction over the subject matter and to bind the parties by its determination, with the result that thereafter they are precluded from successfully contending that the court had no jurisdiction over the subject matter.''

And on page 60, under the subhead ''*b. Factors determining public policy of permitting or denying collateral attack*'' it is said:

''Although a court, having jurisdiction over the parties, determines that it has jurisdiction over the subject matter, the unsuccessful party is not precluded from collaterally attacking the judgment if there are sufficient grounds of public policy for denying to the determination of the court the effect of *res judicata*.

''Where a court which has jurisdiction over the parties but does not have jurisdiction over the subject matter of the action determines that it has jurisdiction over the subject matter and gives judgment for the plaintiff, and the defendant takes no proceedings directly to attack the judgment, the question whether he should be permitted collaterally to attack the judgment is a question of weighing the policy underlying the rules of *res judicata* against the policy prohibiting a court from exceeding the powers conferred upon it.

''Various factors may enter into the determination of the question whether there are sufficient grounds of public policy for denying to the determination of the court the effect of *res judicata*. Among these factors are the following: (1) whether the lack of jurisdic-

tion over the subject matter is clear or doubtful;. (2) whether the determination as to the jurisdiction depended upon questions of fact or of law; (3) .whether the court was one of general or of limited jurisdiction.;. (4) whether the question of jurisdiction was actually litigated; (5) the strength of.the policy underlying the denial to the court of jurisdiction.

"Where the determination by the .court that it has jurisdiction over the subject matter is obviously erroneous, and particularly where it is based upon an obvious misconception of the law, and especiall- where the court is one of limited jurisdiction, there is a policy against making the determination *res judicata* and precluding the unsuccessful party from collaterally attacking the judgment. Thus, for example, if a suit for divorce is brought in the court of a justice of the peace, which has no jurisdiction to grant a divorce, and judgment is given granting a divorce, the judgment is void and subject to collateral attack even though the defendant appeared in the action and the question of the jurisdiction of the court to grant a divorce was litigated and determined adversely to the defendant."

Where a court, without color of right, attempts to exercise jurisdiction clearly beyond that provided by law, even though challenged during trial, such judgment is void and may be collaterally attacked. As for example, where a judge of a municipal court, over the objection of the defendant, attempts to try and finally determine an action in divorce or attempts to try one charged with a felony. There could be no question that such judgment could be attacked collaterally.

In *Spoors* v. *Coen,* 44 Ohio St., 497, 9 N. E., 132, the action was to sell land to pay debts in the administration of an estate. The title to the land had been transferred to another by the decedent before death. The Probate Court attempted to set aside the conveyance

as a part of the land sale proceeding. The statute (Section 6140, Revised Statutes) then provided, *inter alia*, that:

"Where such land is included in the application before a recovery of the possession thereof, the action shall be in the Court of Common Pleas."

Paragraph three of the syllabus provides:

"An order made by the Probate Court for the sale of such lands, upon a judgment of its own, setting aside the conveyance as null and void, is of no validity whatever, and may be impeached in a collateral proceeding to recover the land."

The *Spoors case* is quite different from the case now being considered. Here, the statute by clear language conferred upon the Juvenile Court the jurisdiction which it exercised and, upon challenge, found it had the right to exercise. Not having been appealed, such decision cannot now be collaterally attacked in other proceedings. Here the policy which supports the rule of *res judicata* should prevail.

One other question should be briefly considered, and that is the right of the petitioners to maintain habeas corpus proceedings to regain custody of Patricia Ann from her mother. The petitioners claim no right by agreement or contract for the custody of the child, as was claimed in the *Paddock case, supra*. There was no family relationship, nor had the mother in any sense abandoned the child to the petitioners. On the face of the petition, it is made clear that petitioners were hired to take care of Patricia Ann and by the opinion of the juvenile judge it was found that they had received the sum of $2,000 in a little over two years for their services. If it be claimed that the mother is not a proper person to have custody of Patricia Ann, then the matter should be referred to the Juvenile Court of Ashtabula County, the residence of the minor, upon complaint properly filed.

For the foregoing reasons, the judgment of the Common Pleas Court is affirmed.

*Judgment affirmed.*

HURD and THOMPSON, JJ., concur.